UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **NEALE MISQUITTA** | **CASE NO. 6:18-CV-01175 SEC P** |
| **VERSUS** | **JUDGE ROBERT R SUMMERHAYS** |
| **WARDEN PINE PRAIRIE ICE PROCESSING CENTER** | **MAGISTRATE JUDGE HANNA** |

**MEMORANDUM RULING ON MOTION FOR TEMPORARY RESTRAINING ORDER WITH NOTICE OR PRELIMINARY INJUNCTION**

In this habeas corpus proceeding brought under 28 U.S.C. § 2241, Petitioner Neale Misquitta challenges his continued civil detention by the United States Bureau of Immigration and Customs Enforcement ("ICE") at the Pine Prairie ICE Processing Center and moves for temporary or preliminary injunctive relief. Misquitta has been detained approximately 10 months pending the completion of removal proceedings commenced following a felony conviction for mail fraud and service of 51 months of his federal sentence. Petitioner has been detained under the authority of 8 U.S.C. §1226(c), which provides for mandatory detention of aliens convicted of certain aggravated felonies without benefit of individualized bond hearings. The only ground for pre-removal release under section 1226(c) is a showing that release is necessary to protect a witness, a ground that is inapplicable here. Misquitta contends that his continued detention without an individualized

1

bond hearing violates the Due Process Clause of the Fifth Amendment and seeks release from custody unless Respondent affords him an individualized bond hearing before an immigration judge. On October 19, 2018, the court held a hearing on Misquitta's motion. For the following reasons, the court concludes Misquitta has not established a likelihood of success on the merits, and therefore, Petitioner's Motion is DENIED.

## FACTS

Misquitta, a citizen of India, was lawfully admitted to the United States in 1987 as a non-immigrant student. He later married a United States citizen and acquired lawful permanent residency in the 1990s. In July 2013, Misquitta was convicted of five counts of mail fraud (18 U.S.C. §1341), which subjects him to removal under 8 U.S.C. §1228. Misquitta was sentenced to 71 months in prison and ultimately served 51 months of that sentence.

On August 15, 2017, ICE served Misquitta with a Notice to Appear stating Misquitta was subject to removal based upon his conviction. On November 15, 2017, a hearing on Misquitta's removability was held. At the hearing, Misquitta denied the charges of removability. The Immigration Court reset the case in order to allow ICE to file a brief and submit supporting documentation. ICE submitted its brief on November 29, 2017, and the Immigration Court subsequently issued a written

decision on removability. The Immigration Court held another hearing on December 20, 2017 and again sustained the charges of removability.

On February 6, 2018, ICE took Misquitta into civil immigration custody, as authorized by 8 U.S.C. §1226(c). Misquitta then submitted an application seeking to readjust his status by applying for a waiver pursuant to 8 U.S.C. §1182. This waiver was based upon an "I-130 petition" by Misquitta's wife, requesting that Misquitta be permitted to remain in the United States because his removal would cause extreme hardship to herself and their children, who are all United States Citizens.[1] Following a hearing on the application to readjust status, the immigration judge issued his Ruling on July 12, 2018, wherein it denied Misquitta's request for a waiver and ordered Misquitta's removal. Although the immigration judge found Misquitta had met the burden of proving a hardship, he declined to readjust Misquitta's status on discretionary grounds. Misquitta has appealed that ruling to the Board of Immigration Appeals, and the appeal remains pending at this time.

## LAW AND ANALYSIS

Misquitta contends his continued detention without an individualized bond hearing violates the Due Process Clause of the Fifth Amendment. He argues for a "bright line" rule that would require a bond hearing for section 1226(c) detentions

---

[1] Form I-130 is a "Petition for Alien Relative," whereby a United States citizen establishes the existence of a relationship to certain alien relatives who wish to immigrate to the United States.

3

that exceed six (6) months. To obtain injunctive relief on this claim, Misquitta must establish: (1) a substantial likelihood his cause will succeed on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm the injunction may do to the opposing party, and (4) granting the injunction will not disserve the public interest. *Piedmont Heights Civic Club, Inc. v. Moreland*, 637 F.2d 430 (5th Cir. 1981). Here, the first requirement for injunctive relief -- a "substantial likelihood of success on the merits" -- requires consideration of the statutory context of section 1226(c) and the jurisprudence addressing the constitutionality of mandatory detention under that provision.

### A. **The Statutory Context**.

Section 1226(c) is one part of a broader statutory scheme addressing the removal of aliens. Section 1226 broadly authorizes the detention of aliens pending a final order of removal. 8 U.S.C. §1226. Section 1226(a) provides that any "alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States...." 8 U.S.C. §1226(a) (emphasis added). If an alien is arrested and detained under this provision, section 1226(a) provides that, "[e]xcept as provided in subsection (c)," the Attorney General "may release the alien on-- (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole ...."; 8 U.S.C. §

4

1226(a)(1)-(3). Detention under 1226(a) is generally referred to as "discretionary detention."

Section 1226(c) governs the detention of certain "criminal aliens," and is an exception to the discretionary detention authorized by section 1226(a). Section 1226(c)(1) describes a group of aliens that the government *must* detain:

> The Attorney General *shall* take into custody any alien who [is convicted of the enumerated crimes] when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
> 8 U.S.C. §1226(c)(1).

Section 1226(c)(2) thus mandates detention for this class of aliens. Section 1226(c) also eliminates the availability of release on bond except when "necessary to provide protection to a witness ...." 8 U.S.C. § 1226(c)(2). Aliens subject to section 1226(c) detention are thus not entitled to bond hearings. Misquitta argues that aliens subject to detention under section 1226(c) are subject to indeterminate civil detention with no ability to seek a bond hearing, which he argues violates the Due Process Clause.

### B. Due Process and Mandatory Detention Under Section 1226(c).

#### 1. *Demore* and the Facial Validity of Section 1226(c)

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial due process challenge to section 1226(c). The Court observed that section 1226(c) was adopted "against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens," and that "one of the major causes of

5

the INS' failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings." 538 U.S. at 518 – 19.[2] The Court further observed that the Attorney General had broad discretion to conduct individualized bond hearings and release criminal aliens from custody prior to the adoption of section 1226(c), and that Congress sought to limit that discretion based upon its concern that, "even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight." *Id.* at 520. The Court concluded that mandatory detention of criminal aliens pending removal "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings," and that the evidence before Congress supported the method it selected. *Id.* at 528 ("[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal.") Accordingly, the Court held section 1226(c) was constitutionally valid on its face.

In rejecting the petitioner's constitutional challenge, the Court distinguished *Zadvydas v. Davis*, 533 U.S. 678 (2001), which held the Due Process Clause limits detention following a removal order to a presumptive six (6) month period. After

---

[2] *Demore*, 538 U.S. at 518-19 ( citing Criminal Aliens in the United States: Hearings before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs, 103d Cong., 1st Sess. (1993); S. Rep. No. 104–48, p. 1 (1995); and Department of Justice, Office of the Inspector General, Immigration and Naturalization Service, Deportation of Aliens After Final Orders Have Been Issued, Rep. No. I–96–03 (Mar.1996), App. 46.)

that time period, the government would be required to make an individualized showing that the alien's removal from the United States was significantly likely in the reasonably foreseeable future. The *Demore* court distinguished *Zadvydas* on the ground that *Zadvydas* involved a different statutory provision, 8 U.S.C. §1231, which addresses detention of aliens during the 90-day removal period following a final order of removal. *Zadvydas* involved continued detention where removal could not be accomplished within 90 days. As the *Demore* court noted, "the period of detention at issue in Zadvydas was 'indefinite' and 'potentially permanent,'" whereas detention under section 1226(c), which governs detention pending completion of removal proceedings, has a "definite termination point." *Id.* at 528-29.[3]

### 2. The Circuits Diverge Over the Adoption of a Bright Line Limitation on Section 1226(c) Detention After *Demore*.

*Demore* did not end to the constitutional challenges to section 1226(c). While *Demore* upheld the facial validity of section 1226(c), lower courts entertained "as applied" due process challenges to section 1226(c). Many of those courts relief upon language in *Demore* that section 1226(c) detentions are generally brief – "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases" – and the separate concurrence of Justice Kennedy

---

[3] The Court further noted "in the majority of cases [detention under § 1226(c)] lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Demore*, 538 U.S. at 539.

suggesting that an unreasonable delay by the government could support a due process challenge. 538 U.S. at 530, 532. The lower courts, however, diverged in their approach to due process challenges under section 1226(c).

One group of courts relied on the doctrine of "constitutional avoidance" in adopting a six-month limit on section 1226(c) detention. *See, e.g., Lora v. Shanahan*, 804 F.3d 601 (2nd Cir. 2015); *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013). In *Rodriguez*, the court explained that section 1226(c)'s mandatory detention language must be construed to contain an implicit reasonable time limitation to avoid due process concerns. These courts also concluded that a "bright line" six-month rule would provide consistency and predictability in rulings and ease administrative burdens. *See, e.g., Lora* at 615 (noting that "while a case-by-case approach might be workable in circuits with comparatively small immigration dockets, the Second and Ninth Circuit have been disproportionately burdened by a surge in immigration appeals and a corresponding surge in the sizes of their immigration dockets.")

Other courts eschewed a bright line rule and assessed the reasonableness of mandatory detentions on a case-by-case basis. *See, e.g., Diop v. ICE/Homeland Security*, 656 F.3d 221 (3rd Cir. 2011); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003). These courts recognized that a bright line rule would be inappropriate for the period prior to an entry of a removal order because "hearing schedules and other proceedings must have leeway for expansion or contraction as the necessities of the

case and the immigration judge's caseload warrant." *Ly*, 351 F.3d at 271. In *Diop*, the court examined an array of case-specific factors, including the extent to which the detention was longer than the average length of detention under section 1226(c), and whether prolonged detention was the fault of the government or the immigration court. 656 F.3d at 233 – 35. The court concluded, based on these factors, that a three-year detention without a bond hearing was unconstitutional as applied to the petitioner. *Id.*

### 3. *Jennings v. Rodriguez*: The Supreme Court's Rejection of the Ninth Circuit's Bright Line Rule.

In *Jennings v. Rodriguez*, \_\_\_ U.S. \_\_\_, 138 S. Ct. 830 (2018), the Supreme Court rejected the Ninth Circuit's use of the canon of constitutional avoidance to find an "implicit" six-month limitation on detentions under section 1226(c). According to the Court, the express language of section 1226(c) can only mean "that aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Id.* at 846. In other words, the only reasonable interpretation of section 1226(c) "makes clear that the detention of aliens within [§ 1226(c)'s] scope must continue 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting 8 U.S.C. § 1225(a)). In light of the express text of section 1226(c), the Court described the Ninth Circuit's bright line rule as "textual alchemy" and cautioned that "[e]ven if courts were permitted to fashion 6-month time limits out of statutory silence, they

9

certainly may not transmute existing statutory language into its polar opposite." *Id.* While the Court addressed the Ninth Circuit's opinion with respect to its statutory construction holding, it did not address the broader constitutional question of whether the Due Process Clause places constitutional limitations on prolonged detentions under section 1226(c).

### 4. Post-*Jennings* Jurisprudence.

Following *Jennings*, courts have generally held prolonged detention under section 1226(c) that is unreasonable and arbitrary is subject to challenge under the Due Process Clause. However, the post-*Jennings* decisions of lower courts have almost uniformly rejected a bright line limitation on detentions under section 1226(c). Instead, these courts have adopted a case-by-case approach that, like *Diop*, examine a number of case-specific factors to determine whether a given period of detention is unreasonable and arbitrary.

Some courts have limited their analysis to two factors: (1) the length of the detention, and (2) whether the petitioner had caused or contributed to the length of the detention – i.e. whether the petitioner is "gaming the system." *See, e.g., Dryden v. Green*, 321 F.Supp. 3d 496 (D.N.J. 2018) (detention of just over one year did not warrant a bond hearing where the court found the majority of the delay was caused by petitioner's delay in acquiring counsel and none of the delay was attributable to any inaction or delay on the part of the government); *K.A. v. Green*, 2018 WL

10

3742631 (D.N.J. August 7, 2018) (detention of 19 months required a bond hearing where the court found no bad faith actions by the petitioner contributed to the delay); *C.A. v. Green*, 2018 WL 4110941 (D.N.J. August 29, 2018) (detention of 15 months required a bond hearing where none of the delays were attributable to bad faith on the part of the petitioner); *Thompson v. Edwards*, 2018 WL 4442225 (D.N.J. September 17, 2018) (26 month detention required a bond hearing where none of the delay was attributable to the petitioner); *Gonzalez v. Bonnar, et al.*, 2018 WL 4849684 (N.D. Cal.) (10 month detention without bond hearing did not violate due process where neither the government nor the immigration court acted in bad faith or delayed the proceedings, but rather, some of the delay was caused by petitioner); *Arturo E. v. Green*, 2018 WL 5342720 (D.N.J. October 29, 2018) (detention of 2 years required a bond hearing where the court found that although petitioner was responsible for some delays, there was no indication petitioner was gaming the system).

Other courts have examined a wider array of factors. For example, in *Vega v. Doll*, 2018 WL 3765431 (M.D. Pa. July 11, 2018), the court indicated that the non-exhaustive factors may include: (1) whether detention has continued beyond the average time necessary for completion of removal proceedings; (2) the probable extent of future removal proceedings; (3) the likelihood that removal proceedings will actually result in removal; and (4) the conduct of both the petitioner and the

11

government during the removal proceedings. *Id.* at *10. The court ultimately concluded, based on the foregoing factors, that petitioner's 20-month detention warranted a bond hearing. *Id.* at *13. Similarly, in *Obando-Segura v. Sessions*, 2018 WL 4384166 (D. Md. September 14, 2018), the court ruled that a 20-month period of detention violated due process. There, the court considered six non-exhaustive factors, namely: (1) the length of time the criminal alien had been detained without a bond hearing; (2) the reason for the prolonged detention; (3) whether any impediments exist to final removal if ordered; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention; and (6) the foreseeability of proceedings concluding in the near future. *Id.* at *6.[4]

---

[4] Other courts have considered a similar array of case-specific factors. *Muse v. Sessions*, 2018 WL 4466052 (D. Minn. September 18, 2018) (concluding that petitioner's 14 month detention required a bond hearing after considering (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal); *Cabral v. Decker*, 2018 WL 4521199 (S.D.N.Y. September 21, 2018) (concluding that a seven month detention required a bond hearing after considering (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention was near conclusion); *Dukuray v. Decker*, 2018 WL 5292130 (S.D.N.Y. October 25, 2018) (determining that the petitioner's 10 month detention had become unreasonable after considering (1) the length of time the alien has already been detained; (2) whether the alien was responsible for the delay; (3) whether the detained alien has asserted defenses to removal; (4) whether the alien's civil immigration detention exceeds the

## C. What is the Appropriate Standard After *Jennings*?

In light of *Jennings* and the post-*Jennings* jurisprudence, there is no basis in section 1226(c) or the Due Process Clause to create the six-month time limit on mandatory detention requested by Misquitta. The rationale for a bright line time limit is grounded in a statutory construction of section 1226(c) that was squarely rejected by the Supreme Court in *Jennings*. The cases decided after *Jennings* almost uniformly recognize that *Jennings* precludes a bright line time limit on mandatory detention and have, instead, turned to a case-by-case assessment of whether section 1226(c) violates due process *as applied* to the petitioner before the court. Indeed, some of these decisions come from courts in circuits that had previously adopted a bright line rule. *See, e.g., Gonzalez*, 2018 WL 4849684. These courts expressly recognize that *Jennings* overrules prior circuit jurisprudence adopting a bright line time limit on mandatory detention.

Nevertheless, *Demore* and *Jennings* do not foreclose an "as applied" Due Process Clause limitation on prolonged detentions under section 1226(c) based upon the individual circumstances of a petitioner's case.[5] The touchstone for this analysis

---

time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention).

[5] In both *Demore* and *Jennings*, the Court held that courts have jurisdiction to review the constitutionality of section 1226(c) detentions through habeas proceedings. *See Demore*, 538 U.S. at 516-18; *Jennings*, 138 S.Ct. at 839-42.

is whether mandatory detention without a bond hearing under the circumstances of the case is so "unreasonable or unjustified" that it amounts to an arbitrary deprivation of liberty. *Demore,* 538 U.S. at 532 (Kennedy, J. concurring); *Dryden,* 321 F. Supp. 3d at 502 ("If Petitioner's detention has not become ***so unreasonable or arbitrary*** that continued application of the statute is unconstitutional as applied to Petitioner, § 1226(c) authorizes his continued detention until a final order of removal is entered and Petitioner would not be entitled to relief.") (citing *Jennings,* 138 S. Ct. 846 – 47) (emphasis added); *see also Gonzalez,* 2018 WL 4849684. Whether a prolonged detention is so unreasonable or unjustified as to amount to an arbitrary deprivation of liberty necessarily turns on the purpose of the statute, and whether continued detention still serves that purpose. *Dryden,* 321 F. Supp. 3d at 502. As explained in *Demore*, the purpose of mandatory detention under section 1226(c) is, in part, to prevent "deportable criminal aliens from fleeing prior to or during their removal proceedings," a problem Congress viewed stemmed from the prior system of discretionary detention. 538 U.S. at 528. This purpose is served as long as deportable criminal aliens are held under section 1226(c) until removal proceedings are completed. This result does not run afoul of *Zadvydas*. *Zadvydas* precludes aliens from being held in *indefinite* detention, but section 1226(c) does not impose indefinite detention. It has a termination point, namely exhaustion of a petitioner's appeals and entry of a final order of removal.

At what point, however, does mandatory detention no longer serve the purpose of the statute; in other words, when does detention become so unreasonable and arbitrary that it violates a petitioner's right to due process? The factors that the post-*Jennings* decisions have identified provide some guidance. These factors include:

- the length of time that the criminal alien has been detained without a bond hearing;

- the reason for prolonged detention;

- whether any impediments exist to final removal if ordered;

- whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him or her removable; and

- the conduct of the petitioner and the government during the removal proceedings.

*Obando-Segura*, 2018 WL 4384166; *Vega v. Doll*, 2018 WL 3765431; *Gonzalez*, 2018 WL 4849684. These factors, however, must be tied back to the ultimate question for the court: has prolonged detention become unreasonable, unjustified, or arbitrary in light of the purpose of section 1226(c)? It is unlikely that a petitioner can satisfy this standard absent evidence of government wrongdoing in connection with the removal proceedings, such as actions that unreasonably prolong the removal proceeding or actions taken in bad faith. Where removal proceedings are delayed solely by a party's good faith exercise of its procedural remedies – whether by the

petitioner or the government – continued detention is unlikely to trigger due process concerns in most cases because continued detention until completion of the removal proceedings still serves the purpose of the statute. *See Gonzalez,* 2018 WL 4849684.

**D. Likelihood of Success on the Merits.**

Considering the record as a whole, the Court finds Misquitta has not established that his continued detention without a bond hearing is so unreasonable or arbitrary as to violate the Due Process Clause. Misquitta has been detained for approximately 10 months, following 51 months of incarceration. The record reflects that Misquitta is availing himself of the procedural remedies and defenses to removal available to him. The record does not reflect any unusual delays considering the progress of the case and the procedural remedies invoked by Misquitta. Misquitta recently appealed the decision of the immigration court to the Board of Immigration Appeals, and he has filed his appellate brief. Considering the status of the removal case, Misquitta's detention under section 1226(c) is not indefinite but has a definite termination point: the exhaustion of Misquitta's appeals and procedural remedies. More importantly, there is no evidence in the record that the government has acted in bad faith or otherwise unreasonably delayed Misquitta's removal proceeding. Misquitta's detention pending the completion of his appeal thus continues to serve the purpose of section 1226(c). Accordingly, Misquitta has not established a likelihood of success on the merits of his claim. Since Misquitta has not established

a likelihood of success on the merits, it is unnecessary to consider the remaining factors required to grant injunctive relief. As such, the motion for injunctive relief must be denied.

## CONCLUSION

For the reasons stated above, Misquitta's Motion for Temporary Restraining Order with Notice or Preliminary Injunction [Doc. No. 8] is **DENIED**. A separate order will be entered into the record.

THUS DONE in Chambers on this 16th day of November, 2018.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE